## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOSHUA BOWENS,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 20-CV-3012** |
| | : | |
| **JOHN E. WETZEL**, *et al.*, | : | |
| **Defendants.** | : | |

### MEMORANDUM

**SLOMSKY, J.**                                                    **DECEMBER  4, 2020**

Plaintiff Joshua Bowens,[1] a prisoner currently incarcerated at SCI-Phoenix, brings this *pro se* civil rights action alleging that the destruction of his personal and legal property during the movement of prisoners from SCI Graterford to SCI Phoenix violated his constitutional rights.  Bowens names the following Defendants in their individual capacities: (1) Secretary of Corrections John Wetzel; (2) former Superintendent of SCI Phoenix Tammy Ferguson; (3) Superintendent of SCI Phoenix Jaime Sorber; (4) Lt. Curran; and (5) a John Doe Defendant.  For the following reasons, the Court will dismiss Bowens's Complaint with leave to amend certain claims.[2]

---

[1] Although the Complaint identifies plaintiff as "Joshua Bowens," Bowens is committed under the name "Joshua Bowen."  (*See, e.g.*, ECF No. 9.)

[2] Bowens initiated this civil action by filing a "Motion for an Extension of Time to File Complaint," (ECF No. 1) rather than filing a complaint in accordance with Federal Rule of Civil Procedure 3.  The Court denied that Motion in a June 25, 2020 Order.  (ECF No. 2.)  The Court issued another Order on July 15, 2020 closing the case and informing Bowens that, if he sought to proceed on any claims, he would be required to file a motion to reopen along with a proper complaint, and submit either payment of the fees or a motion for leave to proceed *in forma pauperis* (ECF No. 4.)  The next day, the Clerk of Court docketed a Motion for Leave to Proceed *In Forma Pauperis*, Prisoner Trust Fund Account Statement, and Complaint filed by Bowens, which appear to have crossed with the Court's Order.  (*See* ECF Nos. 5, 6 & 7.)  Upon consideration of those submissions, in a July 23, 2020 Order the Court vacated its July 15, 2020

I.      **FACTUAL ALLEGATIONS**[3]

Bowens was previously incarcerated at SCI Graterford.  As that prison was closing in July of 2018, inmates and their property were relocated to SCI Phoenix by members of a Corrections Emergency Response Team ("CERT"), that allegedly included the John Doe Defendant.  (ECF No. 7 at 6.)[4]  Bowens claims that CERT members failed to inventory his property in accordance with DOC policy.  (*Id.*; *see also id.* at 12.)  As a result, Bowens, like several other inmates who were moved on that occasion,[5] claims that members of CERT lost and/or destroyed certain of his personal and legal property during the move.  (*Id.* at 6.) According to Bowens, officials at SCI Graterford "have been guilty of the disturbing pattern of losing, misplacing, and stealing inmates['] property for over a decade, and the defendant, Stg. Curran was put on notice of this issue in a memo dated April 2, 2009."  (*Id.*; *see also id.* at 16.)

When Bowens received his property at SCI Phoenix, several items were missing, including his mother's obituary, headphones, and "approximately 600 pages comprising of

---

Order, reopened the case, granted Bowens leave to proceed *in forma pauperis* and suspended the issuance of summonses so that the Court could screen the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B).  (ECF No. 8.)  The July 23rd Order was returned to the Court by the United States Postal Service and ultimately remailed to Bowens on November 9, 2020.  In the meantime, having not received the Order, Bowens filed a Motion to Reopen, a Request to Grant Motion to Re-Open, and another Motion to Proceed *In Forma Pauperis* and Prisoner Trust Fund Account Statement.  (ECF Nos. 9, 10, 11, 12.)  The Court will deny these motions as moot because the Court has already reopened this case and granted Bowens leave to proceed *in forma pauperis*. To the extent Bowens requested the status of his case from the Court, (*see* ECF No. 14), this Memorandum and Order reflects the current status of his claims.

[3] The following allegations are taken from the Complaint, exhibits attached thereto, and public records, of which the Court may take judicial notice.

[4] The Court adopts the pagination supplied by the CM/ECF docketing system.

[5] *See, e.g.*, *See Presbury v. Wetzel*, 789 F. App'x 294 (3d Cir. 2020) (per curiam); *Hernandez v. Corr. Emergency Response Team*, 771 F. App'x 143 (3d Cir. 2019) (per curiam); *Wongus v. Correctional Emergency Response Team*, 389 F. Supp. 3d 294 (E.D. Pa. 2019).

criminal trial transcripts, discovery, and Pro Se work product, and approximately 450 pages of material comparison work product including filings, photo copies of Case Law, Etc." (*Id.*)

A review of public records reflects that Bowens was convicted of murder, possessing instruments of crime, and criminal conspiracy in 2005. *See Commonwealth v. Bowen*, CP-51-CR-1200331-2004 (C.P. Phila.). The Pennsylvania Superior Court affirmed his judgment of sentence and the judgment became final on January 12, 2007. *Commonwealth v. Bowen*, No. 3159 EDA 2016, 2018 WL 2295672, at *2 (Pa. Super. Ct. May 21, 2018) ("Appellant did not file for further review with our Supreme Court. Therefore, his judgment of sentence became final thirty days after our decision, *i.e.*, January 12, 2007."). Bowens filed a timely petition for post-conviction relief, which was denied, and his appeal was dismissed on April 7, 2010 due to his failure to file a brief. *Id.* On March 7, 2011, Bowens filed a second post-conviction petition, which was ultimately dismissed as untimely in 2016, seeking reinstatement of his right to appeal the denial of his first petition. *Id.* On appeal, the Pennsylvania Superior Court affirmed the dismissal of the petition as untimely, concluding that Bowens had not established a basis for invoking an exception to the one-year time bar based on his mental incompetence. *Id.* at *2-*4 ("There is nothing in the record to indicate that his condition was of the type that (1) actually prevented his meaningful participation back in 2010 when his failure to file a brief resulted in the dismissal of his appeal, and (2) that the purported condition excusing his failure to file a brief has improved to a degree that he is now competent to do so where he formerly was not.").

In the instant case, Bowens claims he intended to use the lost legal material to challenge his conviction by filing a petition for a writ of habeas corpus after the Pennsylvania Supreme Court declined to review the denial of his second post-conviction petition on December 11, 2018. (ECF No. 7 at 6.); *see also Commonwealth v. Bowen*, 199 A.3d 332 (Pa. 2018) (Table). It

appears he was intending to claim that his criminal trial suffered from a structural error because his "mental illness disability was previously unknown," such that he was not able to assist counsel with his defense.  (ECF No. 7 at 7.)  Bowens asserts that the loss of his legal materials has "foreclosed his ability to pursue a valid basis for relief on his Federal Habeas Corpus, thus causing actual harm, and Time Bar."  (*Id.*)

Bowens alleges that he notified "officials at SCI Phoenix" about the loss of his property, and that they offered Bowens a settlement, but failed to acknowledge all the missing items or offer any compensation for the loss of the obituary.  (*Id.* at 6.)  However, he attached as an exhibit to his Complaint a copy of a "Request for Reimbursement/Property Settlement Agreement" from the "Unit Team" to then-Superintendent Ferguson reflecting that Bowens was offered, and refused, $29.34 for certain of his lost property including the obituary, headphones and a "brief."  (*Id.* at 14.)  Bowens claims the "defendants were biased" toward him because "although they neglected to provide him sentimental and financial relief, they provided other inmates sentimental and financial relief settlements."  (*Id.* at 6.)

Based on those allegations, Bowens raises First Amendment claims and Fourteenth Amendment equal protection claims under a "class of one" theory.  (*Id.* at 3.)  He also alleges "deliberate indifference" and various tort claims, and asserts general a failure to train and supervise claim.  (*Id.* at 3-4.)  Bowens predominately seeks $5,500 in compensatory damages for the loss of his property and "emotional injury."  (*Id.* at 5 & 7.)

## II.     STANDARD OF REVIEW

As Bowens is proceeding, *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Complaint if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard

4

applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Conclusory allegations do not suffice. *Id.* The Court may also consider matters of public record in determining whether a plaintiff states a claim. *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006). As Bowens is proceeding *pro se*, the Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III.   DISCUSSION

### A.  Section 1983 Claims

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). For the following reasons, Bowens's Complaint fails to state a constitutional claim.

#### 1.  Eighth Amendment Claims

To the extent Bowens's allegation of "deliberate indifference" can be construed as an intent to raise Eighth Amendment claims based on the loss or destruction of his property, those claims fail. Conditions of confinement violate the Eighth Amendment's prohibition on cruel and unusual punishment if they satisfy two criteria. First, the conditions "must be, objectively, sufficiently serious" such that a "prison official's act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)

(citations and internal quotation marks omitted).  Second, the official responsible for the challenged conditions must exhibit a "sufficiently culpable state of mind," which "[i]n prison-conditions cases . . . is one of deliberate indifference to inmate health or safety." *Id.*  The destruction of property does not equate to a sufficiently serious deprivation that would give rise to a claim under the Eighth Amendment.  *See Wongus*, 389 F. Supp. 3d at 301-02 (concluding that plaintiff's allegations "that correctional facility staff violated his Eighth Amendment right to be free from cruel and unusual punishment by defacing his family photo with a swastika," while "repugnant and detrimental to the orderly administration of a prison, and should be cause for serious disciplinary action against the responsible party, if known[,]" did not "rise to the level of an Eighth Amendment violation"); *Payne v. Duncan*, Civ. A. No. 15-1010, 2017 WL 542032, at *9 (M.D. Pa. Feb. 9, 2017) ("Plaintiff's claim for destruction of property under the Eighth Amendment does not constitute a deprivation of life's necessities."), *aff'd*, 692 F. App'x 680 (3d Cir. 2017).  Accordingly, the Court will dismiss Bowens's Eighth Amendment claims with prejudice.

### 2.  Equal Protection Claims

Bowens has also failed to state an equal protection claim based on the offer he received in response to his grievance about the lost property.  "[T]o state a claim for 'class of one' equal protection, a plaintiff must at a minimum allege that he was intentionally treated differently from others similarly situated by the defendant and that there was no rational basis for such treatment."  *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008).  "Persons are similarly situated under the Equal Protection Clause when they are alike 'in all relevant aspects.'"  *Startzell v. City of Philadelphia, Pa.*, 533 F.3d 183, 203 (3d Cir. 2008) (quoting *Norlinger v. Hahn*, 505 U.S. 1, 10 (1992)).

Bowens's equal protection claim is based entirely on his allegation that the "defendants were biased" toward him because "although they neglected to provide him sentimental and financial relief, they provided other inmates sentimental and financial relief settlements."  (ECF No. 7 at 6.)  However, Bowens has not alleged sufficient factual matter from which this Court could plausibly infer that the "other inmates" who allegedly received "sentimental and financial relief settlements" were similarly situated or that the Defendants intentionally treated him differently without any rational basis.  Additionally, Bowens's collective use of the word "defendants" and "officials" in his Complaint makes it difficult to understand how each Defendant was personally involved in the claimed equal protection violation.  *See generally Lawal v. McDonald*, 546 F. App'x 107, 113 (3d Cir. 2014) (pleading that relied on "repeated and collective use of the word 'Defendants'" was ambiguous about each Defendant's role in the events giving rise to plaintiff's claims).  Bowens's lone allegation is simply too conclusory to state a plausible equal protection claim under a "class of one" theory.[6]  *See Greco v. Senchak*, 627 F. App'x 146, 150 (3d Cir. 2015) (affirming dismissal of "class of one" equal protection claims where plaintiff was "unable to plead any specific instances of intentional discrimination" and his allegations at most "raise[d] only an inference of discrimination or unjust treatment, not actual instances of intentional discrimination"); *Danihel v. Office of President of U.S.*, 616 F. App'x 467, 470-71 (3d Cir. 2015) (per curiam) ("While Danihel states, without elaboration, that other individuals were treated better than him, these conclusory allegations are altogether

---

[6] In addition to being conclusory, Bowens's Complaint conflicts with itself.  Bowens alleges that, in responding to his grievance about the loss of his property, officials "most troubling, neglected to provide any financial relief offer for his Mothers Obituary."  (ECF No. 7 at 6.)  However, the exhibit he attached to his Complaint in support of this claim reflects that he was offered $5.00 for the loss of the obituary.  (*Id.* at 14.)  While Bowens might have believed he was entitled to a higher offer, his own exhibit reflects that he was offered at least some amount of compensation for his loss.  This further confuses the nature of Bowens's equal protection claim.

insufficient to state a claim."); *Isaac v. Marsh*, Civ. A. No. 20-1993, 2020 WL 6504637, at *4 (M.D. Pa. Nov. 5, 2020) ("When alleging the existence of similarly situated individuals, plaintiffs cannot use allegations that amount to nothing more than conclusory, boilerplate language to show that he may be entitled to relief, and bald assertions that others were treated in a dissimilar manner will not suffice." (internal quotations and alterations omitted)).

### 3. Denial of Access to the Courts

Bowens also asserts First Amendment claims for denial of access to the courts based on the loss and/or destruction of his legal material.  The loss of legal material may constitute a First Amendment claim based on a denial of access to the courts if a prisoner can assert that the loss caused an actual injury.  *See Lewis v. Casey*, 518 U.S. 343, 350-53 (1996).  In other words, a prisoner claiming that he was denied access to the courts must allege an injury traceable to the conditions of which he complains.  *Diaz v. Holder*, 532 F. App'x 61, 63 (3d Cir. 2013) (per curiam) (affirming dismissal of denial of access claims where plaintiff failed to tie alleged deficiencies in library to harm in underlying action).  In general, an actual injury occurs when a prisoner demonstrates that a "nonfrivolous" and "arguable" claim was lost because of the denial of access to the courts.  *Christopher v. Harbury*, 536 U.S. 403, 415 (2002).  "[T]he underlying cause of action, . . . is an element that must be described in the complaint."  *Id.*

Bowens's alleges that the loss of his legal materials prevented him from pursuing a habeas petition challenging his conviction based on his mental illness or disability following the Pennsylvania Supreme Court's December 11, 2018 decision not to review the denial of his second post-conviction petition.   However, Bowens does not describe that challenge with any specificity.  Accordingly, he has not plausibly stated that he lost the ability to pursue a nonfrivolous claim.  He also does not plausibly allege how the lost material impeded his efforts

to pursue his claims.  Nor does Bowens allege facts supporting his allegation that the loss of his materials rendered any putative habeas application time-barred, especially considering the years he spent litigating his untimely second post-conviction petition in state court.  *See Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005) ("Because the state court rejected petitioner's PCRA petition as untimely, it was not 'properly filed,' and he is not entitled to statutory tolling under § 2244(d)(2).").  In sum, Bowens has failed to state a plausible claim that he was denied access to the courts.[7]  *See Presbury*, 789 F. App'x at 295 (affirming the dismissal of access to courts claim based on the CERT team's loss of plaintiff's legal property where plaintiff "did not allege any facts about the merits of his underlying claim" and did not "demonstrate that the loss of his legal materials, while unfortunate and inconvenient, has rendered him unable to seek the District Attorney's review"); *Monroe v. Beard*, 536 F.3d 198, 206 (3d Cir. 2008) (plaintiffs' allegations

---

[7] This is not the first time Bowens has claimed he was prevented from challenging his convictions due to the loss of legal materials.  In October 2017, Bowens filed a lawsuit claiming that several correctional officials at SCI Graterford denied him access to the courts by losing and/or stealing documents, which prevented him from obtaining legal representation "thereby hindering his ability to raise in a post-conviction motion a claim about an incompetency defense at trial."  *Bowens v. Matthews*, Civ. A. No. 17-4800, 2018 WL 3388294, at *1 (E.D. Pa. July 11, 2018), *aff'd*, 765 F. App'x 640 (3d Cir. 2019).  In summarily affirming the dismissal of Bowens's claims, the United States Court of Appeals for the Third Circuit stated:

> Here, Bowens failed to allege a plausible access-to-the-courts claim. His complaint made only conclusory allegations that the unavailability of two mental health reports caused the denial of his PCRA petition. To the extent that Bowens described his PCRA claim at all, he did not describe it well enough to show that it is "nonfrivolous" or "arguable." *Monroe*, 536 F.3d at 205.  Even if it were arguable, he did not allege any prejudice from the defendants' actions, as he failed to allege what specific information the confiscated mental health reports would have provided to support his PCRA claim.

*Bowens v. Matthews*, 765 F. App'x 640, 643 (3d Cir. 2019) (per curiam).  Although in the present action, Bowens claims he was hindered in his ability to file a federal habeas petition, his Complaint suffers from the same defects.

that "defendants confiscated their legal materials" and that "they lost the opportunity to pursue attacks of their convictions and civil rights claims" without "specify[ing] facts demonstrating that the claims were nonfrivolous" did not state a claim).

**B.  Tort Claims**

Bowens's remaining claims are tort claims that arise under Pennsylvania law.  However, 28 U.S.C. § 1332(a) provides the only independent basis for this Court's jurisdiction over those claims.[8]  That provision grants a district court jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."  An individual is a citizen of the state where he is domiciled, meaning the state where he is physically present and intends to remain.  *See Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011).  "[T]he domicile of a prisoner before his imprisonment presumptively remains his domicile during his imprisonment."  *Pierro v. Kugel*, 386 F. App'x 308, 309 (3d Cir. 2010).  "As a general rule, [the amount in controversy] is determined from the good faith allegations appearing on the face of the complaint."  *Spectacor Mgmt. Gp. v. Brown*, 131 F.3d 120, 122 (3d Cir. 1997).  "The sum claimed by the plaintiff controls if the claim is apparently made in good faith.  It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal."  *Dardovitch v. Haltzman*, 190 F.3d 125, 135 (3d Cir. 1999) (quotations omitted).

The Complaint suggests that Bowens and all the Defendants are Pennsylvania citizens.  Furthermore, the amount in controversy is $5,500, which is far below the jurisdictional

---

[8] The Court will not exercise supplemental jurisdiction over those claims, having dismissed Bowens's federal claims.

threshold.  (*See* ECF No. 7 at 7.)  Accordingly, there is no independent basis for exercising jurisdiction over Bowens's state claims.

IV.     **CONCLUSION**

For the foregoing reasons, the Court will dismiss Bowens's federal claims for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), and will dismiss his state claims for lack of jurisdiction.  Bowens's Eighth Amendment claims will be dismissed with prejudice because amendment of those claims would be futile.  His remaining claims will be dismissed without prejudice to amendment in accordance with the Court's Order, which follows.[9]

**BY THE COURT:**

/s/Joel H. Slomsky, J.
**JOEL H. SLOMSKY, J.**

---

[9] Although Bowens cannot articulate an independent basis for the Court's jurisdiction over his state law claims, the Court will not preclude him from reasserting those claims in an amended complaint in the event he can plead a federal claim, such that there is a basis for exercising supplemental jurisdiction.